## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

TRUSTEES of the I.B.E.W. LOCAL UNION
NO. 488 PENSION FUND, HEALTH
INSURANCE FUND, ANNUITY FUND,
EDUCATIONAL FUND, the LOCAL
LABOR-MANAGEMENT COOPERATION
COMMITTEE and JOINT APPRENTICESHIP
AND TRAINING COMMITTEE; TRUSTEES
OF THE NATIONAL ELECTRICAL
BENEFIT FUND and the NATIONAL LABOR
MANAGEMENT COOPERATION FUND; the
CONNECTICUT CHAPTER OF THE
NATIONAL ELECTRICAL CONTRACTORS
ASSOCIATION and the I.B.E.W. LOCAL
UNION NO. 488;

        Plaintiffs,

v.

NORLAND   ELECTRIC,   INC.,   and
NORLAND ELECTRIC, LLC.

        Defendants.

Civil Action No.
3:11 - CV - 709 (CSH)

**JUNE 5, 2015**

## RULING ON PLAINTIFFS' SUPPLEMENTAL APPLICATIONS FOR ATTORNEYS' FEES [DOC. 26] AND FOR INTEREST [DOC. 27]

**HAIGHT, Senior District Judge:**

### I.  INTRODUCTION

Plaintiff trustees of various union pension, health, annuity, educational, and benefit funds ("Plaintiffs") commenced this action to collect from their employer, Norland Electric, Inc., and its alleged successor, Norland Electric, LLC (collectively "Defendants"), delinquent contributions that were due to said funds under a governing collective bargaining agreement ("CBA").  Because

1

Defendants never appeared or answered in this action, on May 29, 2014, Plaintiffs filed a motion for entry of default [Doc. 22] pursuant to Rule 55(a), Fed. R. Civ. P. The Clerk entered the Defendants' default [Doc. 23] on May 30, 2014. Plaintiffs thereafter moved for entry of default judgment [Doc. 24], requesting that the Clerk enter judgment in their favor "for a sum certain or a sum that can be made certain by computation," pursuant to Federal Civil Rule 55(b)(1).

The Court granted in part and denied in part "Plaintiffs' Motion for Entry of Default Judgment." *See* Doc. 25. In that Ruling, the Court held that Count One of the Amended Complaint stated a viable claim for unpaid contributions to the CBA, in violation of ERISA, pursuant to 29 U.S.C. § 1145. Default judgment was therefore granted as to that claim. With respect to Count Two, the Court determined that it comprised a common law claim for breach of contract (*i.e.*, violation of the terms of the CBA), which was preempted by ERISA.[1] Consequently, the Court denied entry of default judgment on Count Two, dismissing that claim.

Regarding damages to be awarded to Plaintiffs, the Court held that judgment against Defendants Norland Electric, Inc. and Norland Electric, LLC would enter on Plaintiffs' ERISA claim in the amounts of: $44,387.66 in unpaid contributions (from June to December 2010), $8,877.53 in liquidated damages for those unpaid contributions, and $513.46 in costs, for a total of $53,778.65.

The Court further found that Plaintiffs are entitled to reasonable attorneys' fees in this action pursuant to 29 U.S.C. § 1132(g)(2)(D), but that the amount of said reasonable fees could not be determined without further detailed submissions by Plaintiffs' counsel. Specifically, the Court denied without prejudice Plaintiffs' request for $2,875.00 in reasonable attorneys' fees and directed

---

[1]   *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43, 47–48, 56–57 (1987) (ERISA'S preemption clause (§ 514(a)), 29 U.S.C. § 1144(a), provides that ERISA supersedes all state laws insofar as they "relate to any employee benefit plan.").

counsel to re-file that request accompanied by contemporaneous time records, describing the names of the attorneys and the services rendered, in compliance with the Second Circuit's articulated requirements in *New York Association of Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

In addition, the Court found that Plaintiffs are entitled to interest on the unpaid contributions to the funds pursuant to 29 U.S.C. § 1132(g)(2)(B).  The Court noted that the funds' applicable "Amended Audit, Collection, and Delinquency Policy" [Doc. 24-4] specifies that "[i]n the event that the Funds are compelled to resort to litigation to collect contributions owed, the employer may be assessed liquidated damages of twenty percent (20%) of the contributions owed, *as well as interest at the rate of twelve percent (12%) per annum . . . .*"  Doc. 24-4, at 3 (¶ 5) (emphasis added). Because Plaintiffs had not requested the 12% interest per annum on the unpaid contributions in their motion for default judgment, the Court directed them to make a new motion to recover that interest, demonstrating proper calculation of the interest, pursuant to the CBA.

The Court then ordered the Clerk to refrain from entering final judgment for the Plaintiffs until the Court ruled on Plaintiffs' anticipated further motions for reasonable attorneys' fees and interest on the unpaid contributions.  Plaintiffs have now filed two "applications" for attorneys' fees and interest, respectively, and have submitted the necessary supporting documentation. Doc. 26 & 27.  The Court resolves both applications herein.

## II.   DISCUSSION

### A.   Reasonable Attorneys' Fees

In its prior Ruling, the Court noted that Section 515 of ERISA explicitly authorizes a district

court to award a plaintiff "reasonable attorney's fees" in cases of "delinquent contributions" under 29 U.S.C. § 1145.  *See* 29 U.S.C. 1132(g)(2)(D).[2]   As to such fees, the amounts are not "sums certain" under the law because they require a judicial determination as to what constitutes reasonable fees.  *Nat'l Automatic Sprinkler Indus. Apprentice and Training Fund v. H.G. Sprinklers, Inc.,* No. 3:10-CV-252 (CSH),  2011 WL 773444, at * 1 (D.Conn. Feb. 25, 2011).  *See also  Blanchard v. Bergeron,* 489 U.S. 87, 96 (1989) ("It is central to the awarding of attorney's fees . . . that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case.");  *Ace Grain Co. v. Am. Eagle Fire Ins. Co.*, 11 F.R.D. 364, 366 (S.D.N.Y. 1951) (attorney's fees are not a sum certain to be "passed upon by the Clerk" because they "require judicial determination" of whether they constitute reasonable fees).   Therefore, the Court must examine the amounts of attorneys' fees requested to determine whether they are reasonable in the case at bar.

Determination of a reasonable fee award falls within the district court's "considerable discretion,"  and should be based upon "[t]he reasonable hourly rate a paying client would be willing to pay," which is determined by "taking account of all case-specific variables." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections*, 522 F.3d 182, 189-90 (2d Cir. 2008).  Courts have examined, for example, such factors as the time and labor required, the complexity and difficulty of the case,  and the experience, reputation, and ability of the attorneys.  522 F.3d at 187 n.3, 188-94.  *See also Johnson v. Ga. Highway Express, Inc*., 488 F.2d

---

[2]   *See, e.g., Trs. of Local 813 Ins. Trust Fund v. Freedom Demolition Inc.*, No. 13-CV-2701 (NGG) (SMG), 2014 WL 5305983, at *7 (E.D.N.Y. Oct. 15, 2014)("Upon a finding that a defendant has been delinquent in paying contributions, liability for attorney's fees under 29 U.S.C. § 1132(g)(2) is mandatory.").

4

714, 717-19 (5th Cir.1974) (listing twelve possible factors for court to consider when evaluating reasonableness of attorneys' fee award), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

### 1.   Lodestar Approach - Reasonably Hourly Rate Times Reasonable Hours Expended

The United States Supreme Court has endorsed the "lodestar approach" to calculate reasonable attorneys' fees, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-54 (2010).[3] Under this approach, the Court determines reasonable attorneys' fees by multiplying the number of reasonable hours expended by the reasonable hourly rate. *Id.* at 551-52. In general, the "lodestar looks to the prevailing market rates in the relevant community." *Id*. at 553 (citation and internal quotation marks omitted). When calculated in this manner, such fees are presumptively reasonable, and generally only subject to enhancements in "rare" and "exceptional" circumstances. *Id*. at 551-54. *See also, e.g., Kroshnyi v. United States Pack Courier Servs., Inc*., 771 F.3d 93, 108 (2d Cir. 2014) ("the district court [should] begin its calculation [of reasonable attorneys' fees] by first performing a lodestar analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate") (citing *Perdue*, 559 U.S. at 552–55); *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) ("In calculating attorney's fees, the district court must first determine the 'lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – [which] creates a presumptively reasonable

---

[3]Even prior to *Perdue*, the Second Circuit had "adopted the lodestar method to determine the amount of attorney's fees to be awarded in ERISA actions." *DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1043 (E.D.N.Y. 1993) (citing, *inter alia*, *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058 (2d Cir. 1989), *cert. denied*, 496 U.S. 905 (1990)).

fee."') (quoting *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir.2011)).

As to the applicable hourly rate, the court "retains discretion to determine what constitutes a reasonable fee" by attorneys. *Parris v. Pappas*, 844 F.Supp. 2d 262, 265 (D.Conn. 2012) (quoting *Millea*, 658 F.3d at 166) (ellipsis omitted).   "[A] reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation" of a particular kind of case. *Parris,* 844 F.Supp. 2d at 266 (quoting *Perdue*, 559 U.S. at 552). *See also Parrish v. Sollecito*, 280 F.Supp.2d 145, 169-70 (S.D.N.Y. 2003) ("A reasonable starting point for determining the hourly rate for purposes of a lodestar calculation is the attorney's customary rate.") (collecting cases).

Furthermore, in general, a  reasonable hourly rate is "one based on prevailing fees in the district where the case is litigated," in this case the District of Connecticut, and/or "the rate a paying client would be willing to pay." *Parris*, 844 F.Supp. 2d at 266 (citation and internal quotation marks omitted). *See also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (Reasonable hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); *Arbor Hill*, 522 F.3d at 190 ("The  reasonable hourly rate is the rate a paying client would be willing to pay[,]. . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.").

In calculating the reasonable hourly rate, the court also examines such factors as the level of experience of an attorney and nature of the case in assessing reasonableness of his or her fee. *Parris*, 844 F.Supp. 2d at 266-67 (holding $275 per hour "a reasonable rate for an attorney with more than eleven years of legal experience" and "$200 per hour" a "reasonable rate for an attorney with four years of experience"). *See also Sony Electronics, Inc. v. Soundview Techs., Inc.*, 389 F.Supp.2d 443,

447 (D.Conn. 2005) ("The 'lodestar' figure should be in line with those [rates] prevailing in the community for similar services by *lawyers of reasonably comparable skill, experience, and reputation*.") (citation and internal quotation marks omitted) (emphasis added).

The Court further considers the number of hours for which fees will be awarded to decide whether the time was "usefully and reasonably expended" by counsel. *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). *See also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[t]he court should include the number of hours claimed by plaintiffs' attorneys that are supported by time records" and "that are not excessive or duplicative").

Lastly, once the court has determined a "presumptively reasonable fee, the final step in the fee determination is to inquire whether an upward or downward adjustment is required." *Parris*, 844 F.Supp. 2d at 270.   In evaluating whether a fee award should be adjusted, the Supreme Court has held that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436).

In sum, as set forth in its prior Ruling, the court employs the lodestar approach and determines a  "presumptively reasonable fee" by engaging in a "four-step process":

>  "[T]he court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award."

*Parris*, 844 F.Supp. 2d at 266 (quoting *Adorno v. Port Auth. of New York and New Jersey*, 685 F.Supp. 2d 507, 511 (S.D.N.Y. 2010)).

2.      __Plaintiffs' Application for Reasonable Attorneys' Fees__

Upon careful review of the Plaintiffs' supplemental application for reasonable attorneys' fees, the Court now finds an adequate factual basis upon which to hold that the requested fees in the amount of **$2,875.00** are "reasonable."  First, counsel have presented the contemporaneous time records of Robert M. Cheverie & Associates, P.C. (the "Cheverie law firm"), describing the services they have rendered in the litigation of the instant matter, in compliance with the Second Circuit's mandate in *New York Association of Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).[4]  *See*  Doc. 26-1 (Ex. A) (chart delineating attorneys' names, hours expended, and nature of work  performed).   These records indicate that the Cheverie law firm  "expended eleven and one-half (11.5) hours in [this] case on behalf of Plaintiffs." Doc. 26-2 (Ex. B.) ("Supplemental Affidavit of Gregory S. Campora in Support of Motion for Attorneys' Fees"), ¶ 3.   The Court was thus able to determine that (1) Attorney Gregory Campora expended 8.0 hours drafting documents, preparing correspondence, holding conferences, and reviewing documents; and (2) Attorney Adam Garelick spent 3.5 hours reviewing the file, preparing documents, and participating in a conference.

As to the proposed hourly rate of $250, Plaintiffs' counsel indicated that the Cheverie law firm is "limited primarily to the representation of multi-employer Taft-Hartley Funds and labor law." Doc. 26-2, ¶ 2.  This firm thus specializes in cases regarding union employee funds, such as that at

---

[4]   *See also  Hensley v. Eckerhart*, 461 U.S. 424, 440-41 (1983)  ("when a lawyer seeks to have his adversary pay the fees of the prevailing party, the lawyer must provide detailed records of the time and services for which fees are sought"; and "[a] District Judge may not . . . authorize the payment of attorney's fees unless the attorney involved has established by clear and convincing evidence the time and effort claimed and shown that the time expended was necessary to achieve the results obtained.")*; Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir.1998) ("Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done.").

bar.  As to levels of particular experience and expertise, Attorney Campora, counsel of record, is a "2001 graduate of the University of Connecticut School of Law" and has been "associated with Robert M. Cheverie & Associates, P.C. for approximately fourteen (14) years, where [he has] devoted [his]  practice almost exclusively to the representation of Taft-Hartley and ERISA Funds and labor unions such as the Plaintiffs." *Id*., ¶ 4.  Attorney Garelick, also of the Cheverie law firm, "is a 2005 graduate of the Benjamin N. Cardozo School of Law" with three prior years of experience with  "the U.S. Department of Labor-Employee Benefits Security Administration" and two years of prior experience  "in private practice primarily devoted to the representation of Taft-Hartley and ERISA Funds and labor unions such as the Plaintiffs." *Id.*, ¶ 6.

Given the Cheverie law firm's particular specialty in ERISA matters, the firm  "negotiated a fee of Two Hundred Fifty Dollars ($250.00) per hour for attorney time with clients, the Funds, for the performance of this type of legal representation."[5]  Doc. 26, at 2-3.  Attorney Campora represents that such an hourly fee is reasonable for the Cheverie law firm's representation under the present circumstances – *i.e.*, "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[6]  *Id.*, at 3 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  *See also* Doc. 26-2, ¶ 7 (Campora avers that "taking into consideration the skill and experience of the attorneys who have worked on this matter for Plaintiffs

---

[5]  In Attorney Campora's  prior sworn "Declaration,"  filed in support  of Plaintiffs' prior Motion for Default, Campora avers that his firm "believe[s] that this hourly rate is below the usual and customary fee charged for this type of work."  Doc. 24-5, ¶ 5.

[6]  *See also*  "Declaration of Attorney  Campora"  [Doc. 24-5],  stating that the "expended eleven and one-half (11.5) hours in the above captioned case on behalf of Plaintiffs," is an "amount of time . . . within the usual and customary time spent by an attorney on this type of case."  Doc. 24-5 (Campora Declaration), ¶¶ 3-4.

and the nature of the proceeding, Plaintiffs' attorneys' fees (including the hourly rate and total time expended) in the amount of $2,875.00 are reasonable.").

Upon review of counsel's detailed contemporaneous records and the factual evidence presented regarding counsel's substantial experience and particular expertise in ERISA matters, the Court finds that both the negotiated hourly rate of $250 and the 11.5 hours expended by counsel to be reasonable in this case.

As to the hourly rate of $250, case precedent in the Second Circuit and this District reflects that such a rate falls within the range of hourly fees deemed reasonable in ERISA cases. *See, e.g.*, *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 97 (2d Cir. 2006) (determining that $325 per hour was a reasonable hourly rate in the ERISA context and noting that "cases cited by [counsel indicated] that the prevailing rate for ERISA practitioners in this [Second] Circuit was $300 per hour"); *Mikrut v. Unum Life Ins. Co. of Am.*, No. 3:03-cv-1714 (SRU), 2007 WL 2874801, at *4 (D. Conn. Sept. 28, 2007) (holding reasonable hourly rates in this District for attorneys in ERISA case were $350 per hour for a partner, $220 per hour for an associate, and $100 per hour for a paralegal or law student).[7] Moreover, this District has held that fees of as much as $395 and $350 per hour were reasonable for counsel with "a nationwide ERISA practice"

---

[7] The Court also notes that attorneys' hourly rates relating to other civil litigation in this District are in line with the requested hourly rate. *See, e.g., Palmer v. Midland Funding, LLC*, No. 3:14-CV-00691 (JCH), 2015 WL 1897457, at *2 (D.Conn. April 27, 2015) (in action pursuant to Fair Debt Collection Practices Act, court held $400 per hour "a reasonable hourly rate" for attorneys' fees for experienced attorney because fee was in line with the "prevailing market rate" in the District); *Watrous v. Borner*, 995 F.Supp.2d 84, 89 (D.Conn. 2014) ("based on the court's own knowledge of rates charged in this District, the court has previously found $350 per hour to be what a lawyer who is not a longstanding expert in civil rights litigation could reasonably bill "); *Wells v. Yale Univ.*, No. 3:10CV2000 (HBF), 2013 WL 6230263, at * 1 (D.Conn. Dec. 2, 2013) (holding $300 per hour and $200 per hour "reasonable" hourly rates for award of attorneys fees to two attorneys who filed motions for sanctions and motions *in limine* in civil employment action).

and "special expertise" in ERISA litigation. *Dobson v. Hartford Fin. Servs. Grp., Inc.*, No. 3:99-CV-2256 (JBA), 2002 WL 31094894, at *3 (D. Conn. Aug. 2, 2002).

Here, Attorney Campora has practiced in the field of ERISA law for 14 years and Attorney Garelick has practiced in this subject area for more than 5 years.[8]   Moreover, following a series of motions, the case was competently litigated to a successful conclusion for Plaintiffs.[9]   Under these circumstances, and in light of the prevailing rates in the District, an hourly rate of $250 per hour is reasonable.

As to the documented hours expended, given the prior motions and current procedural posture of the case, 11.5 hours is reasonable. All documented tasks by counsel were directed toward preparation of the case and making the necessary motions to expedite resolution.  In sum, the hours expended, both as to substance of task and length of time, are reasonable in this matter. Accordingly, employing the lodestar approach, the Court will multiply the Cheverie law firm's $250 hourly rate by the documented 11.5 hours expended to reach a total lodestar of **$2,875.00** in reasonable attorneys' fees.

Having examined case-specific factors leading to this finding of a  "presumptively

---

[8]   The Court notes that although Attorneys Campora and Garelick have different lengths of ERISA experience (14 years versus 5 years), the Cheverie law firm billed their clients at a consistent negotiated rate of $250 per hour.  Attorney Campora, however, as counsel of record, worked the lion's share of the hours on the case (8 of the 11.5 hours expended); and the Court finds that Attorney Garelick, though less experienced than Campora, has certainly  practiced in the field of ERISA law long enough to be deemed experienced.  Therefore, whether viewed as an average or flat billing rate for the two attorneys at bar, $250 per hour is  reasonable.

[9]   Granted, the case will close prior to trial due to Defendants' default.  Nonetheless, Plaintiffs had no way of knowing when they hired the Cheverie law firm what legal steps might be required in pursuing the action.  Plaintiffs thus understandably hired experienced ERISA lawyers to guide their claims toward resolution.

reasonable fee," the Court concludes that Plaintiffs have not demonstrated any grounds to suggest that "an upward or downward adjustment [to the lodestar amount] is required." *Parris*, 844 F.Supp. 2d at 270. There has been no suggestion that the award should be increased; and the Court finds none on the record.   Plaintiffs prevailed in this action through default, rather than through a novel or complex  legal strategy or an unusual quantity of labor.  Similarly, there are no facts in the record to support reduction of the hourly fee.  In sum, no "rare" and "exceptional" circumstances warrant adjustment to the award**.** *Perdue*,  559 U.S. at 552 (citation omitted).  The Court will therefore grant Plaintiffs their requested award of **$2875.00** in reasonable attorneys' fees.

**B.**      **Interest on Unpaid Contributions and Liquidated Damages**

With respect to Count One of the Amended Complaint, pursuant to  29 U.S.C. § 1132(g)(2), in an action under 29 U.S.C. § 1145, the court must award the plan interest on the unpaid contributions and liquidated damages.[10]  Specifically, § 1132(g)(2) provides, in relevant part:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –
>
>          . . .
>
>    (B) interest on the unpaid contributions,
>
>    (C) an amount equal to the greater of –
>
>          (i) interest on the unpaid contributions, or
>
>          (ii) liquidated damages provided for under the plan in
>          an amount not in excess of 20 percent (or such higher
>          percentage as may be permitted under Federal or State

---

[10]  Such amounts awarded are in addition to "unpaid contributions," "reasonable attorney's fees and costs of the action," and "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132 (g)(2)(A), (D)-(E).

law) of the amount determined by the court [as the
unpaid contributions] . . . . .

29 U.S.C. § 1132 (g)(2)(B)-(C).[11]

As to interest on the unpaid contributions, § 1132(g)(2) further provides that for the purposes
of this section of the statute, "interest on unpaid contributions shall be determined by using the rate
provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." Employing
the applicable rate, such interest accrues (1) during the period of the delinquency; (2) from the date
of the commencement of the action through the date of judgment; and (3) from the date of judgment
until the entire amount is paid. *Finkel v. Millennium Fire Servs., LLC,* No. 09-CV- 40 (RRM), 2011
WL 866995, at \*10  (E.D.N.Y. Feb. 16, 2011) (citing, *inter alia,* 29 U.S.C. §§ 1132 (g)(2)(B)).

As explained in the Court's prior ruling [Doc. 25], the amount of interest to be awarded
under 1132(g)(2)(B) is *in addition to* the amount of liquidated damages described in § 1132(g)(2)(C)
as "the greater of" interest or liquidated damages. *See, e.g., Natale v. Country Ford Ltd.,* No. 10-CV-
4128 (ADS)(GRB), 2014 WL 4537501, at \*6 (E.D.N.Y. Aug. 20, 2014) ("If awarded under
subsection [29 U.S.C. § 1132(g)(2)] (C)(i), the liquidated damages are to be awarded in addition to
the statutory interest provided for by subsection (B)."). Furthermore, "[i]f the contractual liquidated
damage rate exceeds 20%, it is capped at 20% as per the ERISA statute." *Bldg. Serv. 32BJ Health
Fund v. Renaissance Equity Holdings, LLC*, No. 08 Civ. 9264(DC), 2009 WL 5253548, at \*6
(S.D.N.Y. Dec. 30, 2009) (citing 29 U.S.C. § 1132(g)(2)(C)(ii)).

_____

[11]  *See, e.g.*, *Gesualdi v. D & E Top Soil & Trucking Inc.*, No. 11-CV-5938 (NG) (MDG),
2013 WL 1729269, at \*5 (E.D.N.Y. Mar. 26, 2013) ("The award of additional interest or liquidated
damages is mandatory when a fiduciary prevails on a claim for unpaid contributions under ERISA");
(citations omitted); *report and recommendation adopted*, 2013 WL 1728893 (E.D.N.Y. Apr. 22,
2013); *Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan,* No. 05 Civ.
6819(SAS), 2006 WL 1292780, at \*4 (S.D.N.Y. May 11, 2006) (same).

1.    __Interest on Unpaid Contributions__

As set forth *supra*, § 1132(g)(2) specifies that "interest on unpaid contributions shall be determined by using the rate provided under the plan," if the plan has designated such a rate. *See*, *e.g.*, *O'Hare v. Gen. Marine Transport Corp.*, 740 F.2d 160, 170 (2d Cir. 1984), *cert. denied*, 469 U.S. 1212 (1985).  In the case at bar, the rate of 12% interest per annum is specified in the "Amended Audit, Collection, and Delinquency Policy" of the trust funds at issue. *See* Doc. 24-4, at 3 (¶ 5) ( "[i]n the event that the Funds are compelled to resort to litigation to collect contributions owed, the employer may be assessed liquidated damages of twenty percent (20%) of the contributions owed, *as well as interest at the rate of twelve percent (12%) per annum* . . . . ") (emphasis added).  As described in the Affidavit of Leo Ricciardelli, Contract Administrator for the Southern Connecticut I.B.E.W. Trust Funds, "[p]ursuant to [the] Collective Bargaining Agreement, Norland Electric, Inc., and its successor, Defendant Norland Electric, LLC, agreed to be bound to and comply with the terms and conditions of each Trust Agreement and policies adopted by the Trustees." Doc. 24-3, ¶ 4.  Because Defendants are bound by the 12% interest rate delineated in the Collection Policy, the Court directed Plaintiffs to file a supplemental motion, calculating the interest on the unpaid contributions at 12% per annum, pursuant to the CBA.

In their "Supplemental Application for Interest" [Doc. 27] and supporting Exhibits, Plaintiffs now acknowledge that they "are entitled to interest on the unpaid contributions pursuant to 29 U.S.C. § 1132(g)(2)(B)." Doc. 27, at 2.  Moreover, because Plaintiffs were compelled to resort to litigation of this matter to collect Defendants' unpaid contribution to the Funds, Plaintiffs have complied with the Court's direction and calculated twelve percent (12%) interest per annum, as specified in Plaintiffs' "Amended Audit, Collection and Delinquency Policy" [Doc. 24-4, at 3 (¶ 5)].  Doc. 27,

14

at 3.  *See also* Doc. 27-1 (Ex. A.) ("Supplemental Affidavit of Leo Ricciardelli").

In particular, in Exhibit B, attached to their present application, Plaintiffs have provided a chart with the total amounts of unpaid contributions for the relevant months and the corresponding amounts of interest on those amounts at 12% per annum.  *See* Doc. 27-2 (Ex. B) (specifying "Contributions and Interest Owed June through December 2010").   In Exhibit A, Contract Administrator  Ricciardelli testified by affidavit that the chart in Exhibit B properly shows the amounts of "interest, calculated at 12% per annum, owed by the Defendants for their unpaid contributions to the Funds for the months of June 2010 to December 2010"  and also for the "respective months in which the contributions became due to February 2015, the month of the Court's Ruling on [Plaintiffs']Motion for Entry of Default Judgment."[12]   Doc. 27-1, ¶ 5.

Specifically, through Ricciardelli, Plaintiffs declared that the following are the correct amounts of interest owed for unpaid contributions: **$1,804.73** for June 2010, **$3,781.44** for July 2010, **$2,801.89** for August 2010; **$6,690.42** for September 2010; **$4,137.20** for October 2010; **$1,184.93** for November 2010; and **$2,679.75** for December 2010.  *Id.*, ¶ 6.  In total, these amounts add up to **$23,080.36** in interest for unpaid contributions.  *Id.*; *see also* Doc. 27-2 (chart indicating that  "Total Interest Due" is **$23,080.36**).

The Court finds that Plaintiffs' calculation of 12% interest on unpaid contributions complies with the Fund's  "Amended Audit, Collection, and Delinquency Policy" [Doc. 24-4], and comports

---

[12]   In  the case at bar, Plaintiffs have calculated interest on the unpaid contributions from the end dates of the months for which Defendants failed to pay said contributions to the date that the Court initially granted default judgment in February.  Plaintiffs filed their supplemental applications approximately one month later and entry of the Court's final judgment was withheld until the present, pending calculation of the interest amounts and submission of contemporaneous time records for attorneys' fees.

with 29 U.S.C. § 1132(g)(2)(B).  Moreover, an examination of the figures reveals that the calculation

of interest has been performed accurately from the time of the delinquency until February of 2015.[13]

Because, however, the Court postponed the Clerk's entry of default judgment until it could rule on

Plaintiffs' supplemental applications, the Court adds an additional 3 months to the interest

calculation.  This extra period takes into account the fact that  interest accrues from the date

contributions are delinquent, which, under the CBA at issue, occurred "fifteen (15) calendar days

following the end of the calendar month in which the work was performed."  Doc. 24-4, ¶ 1 ("Due

Date" for "Contributions").[14]  The Court thus deducted 15 days from the total intervening period

from its Ruling on February 19, 2015 till the present date to arrive at 3 months.[15]

Therefore, in addition to the Plaintiff's calculated interest of **$23,080.36** on the unpaid

contributions under § 1132(g)(2)(B), the Court will award  **$1,331.63** interest for the time period

from its prior Ruling to the present.  *See* Doc. 27-2 (Plaintiffs' calculations of interest owed) and the

attached chart delineating additional amounts of interest owed during 3-month period between

Plaintiffs' calculations and entry of judgment.  The Court will thus award a  total of **$24,411.99** in

interest on unpaid contributions.

---

[13]  For example, Plaintiffs' interest calculations may be readily verified by inputting the amounts of unpaid contributions and the 12% interest rate  into calculators which are available for such purposes. *See, e.g.*,  www.easycalculation.com/simple-interest.php.

[14]  *See, e.g., Bldg. Serv. 32BJ Health Fund v. Renaissance Equity Holdings, LLC*, No. 08 Civ. 9264 (DC),  2009 WL 5253548, at *3 (S.D.N.Y. Dec. 30, 2009) ("Generally in ERISA collection cases, interest and penalties accrue from the date the contributions became 'delinquent' – *i.e.*, the date on which payment was originally due.") (collecting cases).

[15]   From February 19, 2015 to the present date of June 5, 2015, 107 days elapsed. Subtracting 15 days from that total (to reflect the 15-day period following the end of the calendar month for the "due date" to occur), 92 days or 3 months have expired.

2.    **Liquidated Damages**

In accordance with the Collection Policy of the Southern Connecticut I.B.E.W. Trust Funds, Plaintiffs previously elected to seek "liquidated damages of twenty percent (20%) of the contributions owed" in the amount of **$8,877.53** under § 1132(g)(2)(C).  They chose that amount prior to calculating the interest on the unpaid contributions so were unaware whether the liquidated damages (20% of the unpaid contributions) would exceed  the amount of said interest.[16]

Federal statute mandates that this Court award the "greater" of the two amounts.  28 U.S.C. § 1132(g)(2)(C).  In particular, with respect to liquidated damages under § 1132(g)(2)(C), courts in this Circuit have recognized that when "[c]alculating liquidated damages based on interest . . . results in a higher award than calculating liquidated damages at 20% of the principal," the court should award Plaintiffs the larger amount, "which [may be] equal to the amount of interest owed on the unpaid contributions." *Bds. of Trs. of Ins., Annuity, & Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Local Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 12 Civ. 3363(KAM)(VMS), 2014 WL 674098, at *8  (E.D.N.Y. Feb. 3, 2014).  *See also  Trs. of Local 813 Ins. Trust Fund v. Freedom Demolition Inc.*, No. 13-CV-2701 (NGG) (SMG), 2014 WL 5305983, at *6 (E.D.N.Y. Oct. 15, 2014) ("Plaintiffs seek liquidated damages equal to the amount of interest due, which they correctly calculate to be higher than 20% of the unpaid contributions."); *Labarbera*

---

[16] If  Plaintiffs accepted liquidated damages of 20% of the contributions owed, they would be ineligible to receive the "double interest" they would otherwise receive under § 1332(g)(2)(C)(i). *See, e.g., Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 285 (2d Cir.1992) ("an award under this section [1132(g)(2)(C)] encompasses, in addition to interest on the unpaid contributions, an amount equal to the greater of such interest (hence, 'double interest') or the liquidated  damages provided under the parties' agreement up to 20 percent of the amount of delinquent contributions."), *abrogated on other grounds*, *Gerosa v. Savasta & Co.*, 329 F.3d 317, 322-23 (2d Cir. 2003).

*v. ASTC Laboratories Inc.*, 752 F.Supp. 2d 263, 277 (E.D.N.Y. 2010) ("the amount of interest owed on the contributions amounts to $127,992.28. Due to the lapse in time and high interest provided under the Trust Agreement, this amount far exceeds 20% of the unpaid contributions. I thus recommend that the Court award Plaintiffs liquidated damages in the amount of $127,992.28.")*; Gesualdi v. Tapia Trucking LLC*, No. 11–CV–4174 (DLI) (JMA), 2012 WL 7658194, at *3 (E.D.N.Y. Oct. 15, 2012) ("Here, the interest due on the unpaid contributions exceeds 20% of the unpaid contributions [in liquidated damages]. Accordingly, I recommend that plaintiffs be awarded $15,045.51 [interest on the unpaid contributions]" under § 1132(g)(2)(C)), *report and recommendation adopted*, 2013 WL 831134 (E.D.N.Y. Mar. 6, 2013).[17]

In the case at bar, the Court must therefore compare the amount of interest owed with respect to unpaid contributions under § 1132(g)(2)(B) with 20% liquidated damages. Here, the Court has determined that the total amount of interest on the unpaid contribution (**$24,411.99**) far exceeds the amount of liquidated damages provided for under the plan (**$8,877.53**). Under such circumstances, the Court must award Plaintiffs an additional **$24.411.99** in interest pursuant to § 1132(g)(2)(C)(i) – "double interest" – instead of 20% liquidated damages under  § 1132(g)(2)(C)(ii)

---

[17]   It thus follows that conversely, when the liquidated damages exceed the amount of interest on the unpaid contributions, the Court must award the liquidated damages (up to the statutory maximum amount of 20% of the unpaid contributions).  *See, e.g., New England Healthcare Employees Welfare Fund v. iCARE Mngt., LLC*, No. 3:08 CV 1863(JGM)  2009 WL 3571311, at *12 (D.Conn. Oct. 26, 2009) ("Liquidated damages will be assessed at 20% of the total delinquency as such number is greater than double the interest.") (citing 29 U.S.C. § 1132(g)(2)(C)(ii)); *LaBarbera v. T & M Specialties Ltd.*, No. 06-CV-5022 (CPS), 2007 WL 2874819, at *5 (E.D.N.Y. Sept. 27, 2007) ("The Trust Agreement provides for liquidated damages in the amount of 20% of the unpaid contributions. Twenty percent of the $37,499.58 in unpaid contributions amounts to $7,499.92. As of today's date, this amount is greater than the interest owed, and I therefore recommend that the Funds be awarded liquidated damages in the amount of 20% of the unpaid contributions.") (citations omitted).

18

**C.**   **Post-Judgment Interest**

Finally, as specified in its February Ruling, the Court will award post-judgment interest as provided by law.   In particular, Plaintiffs will receive post-judgment interest in an amount to be determined in accordance with the formula specified in 28 U.S.C. § 1961, the Federal Courts Improvements Act of 1982.[18]   *See  Lewis v. Whelan,* 99 F.3d 542, 545 (2d Cir.1996) ("The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.") (citing 28 U.S.C. § 1961(a));  *Indu Craft, Inc. v. Bank of Baroda,* 87 F.3d 614, 619 (2d Cir. 1996) (prevailing party is entitled to post-judgment interest as a matter of right**)***, cert. denied*, 519 U.S. 1041 (1996).

Post-judgment interest is applicable in the ERISA context in the same manner in which it is awarded in other civil actions in which money damages are awarded .   *See, e.g.,  Genworth Life and Health Ins. Co. v. Beverly,* 547 F.Supp.2d 186, 190 (N.D.N.Y. 2008) ("[t]he post-judgment interest rate in an ERISA action is tied" to the formula for calculation set forth in 28 U.S.C. § 1961(a)); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) ("the federal post-judgment interest statute, 28 U.S.C. § 1961 (1988), is applicable in ERISA cases").  Moreover post-judgment  interest "shall be computed daily [from the date of judgment] to the date of payment." 28 U.S.C. § 1961(b).

---

[18]   Pursuant to 28  U.S.C. § 1961(a),  post-judgment interest must be  "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the . . . Federal Reserve System, for the calendar week preceding the date of the judgment."

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the Plaintiffs' Supplemental Applications for Attorneys' Fees [Doc. 26] and for Interest [Doc. 27] are GRANTED.  The Clerk is directed to enter  judgment in favor of Plaintiffs against Defendants Norland Electric, Inc. and Norland Electric, LLC.  Within that judgment, pursuant to 29 U.S.C. § 1132(g)(2), Plaintiffs shall be awarded the following amounts:

> (A)  **$44,387.66** in unpaid contributions (from June to December
>
> 2010);
>
> (B)   **$24,411.99** in interest on the unpaid contributions;
>
> (C)   an additional amount of **$24,411.99** in interest on the unpaid
>
> contributions   (which   is   greater   than   the   maximum   allowed
>
> "liquidated damages provided for under the plan"); and
>
> (D)  **$2,875.00** in reasonable attorneys' fees and **$513.46** in costs of
>
> the action,

for a total award of  **$96,600.10**.  In addition, Plaintiffs shall be granted post-judgment interest in an amount to be determined pursuant to 28 U.S.C. § 1961, the Federal Courts Improvements Act of 1982.

Upon entering judgment in accordance with this Ruling, the Clerk is directed to  close the file.

It is So Ordered.

Dated: New Haven, Connecticut
June 5, 2015

                                                   */s/Charles S. Haight, Jr.*
                                                CHARLES S. HAIGHT, JR.
                                                Senior United States District Judge